May it please the court. In the time that I've got this afternoon, I intend to focus on the two claim construction issues that are presented in the briefs. I'll start with what we believe was the improperly narrow definition of the term channel map information to require four specific discrete pieces of information that are nowhere found in the claim. And secondly, I'll talk about the failure of the court to narrow the terms identifying and assembling with respect to the disclaimer of the use of program map table information. Let me start with the program map table. Let me start with the channel map information argument. The ALJ found, and our opponents argue, that the term channel map information as used in this patent is required to contain four specific and discrete pieces of information. A program reference number, what's called a PCR PID, a stream type identifier, and what are called elementary PIDs or program identifiers. This was erroneous. The construction was offered to attempt to avoid anticipation by the A55 standard, and there is no basis in the claims or the specification, let alone the prosecution history, for so narrowing the claims. If the claims had been meant to require those four specific pieces of information, they should have been written that way. Tellingly, in the FUNAI brief, and to an extent also in the International Trade Commission. Didn't the ALJ in essence read the preamble into the claims? You can't decode without all four pieces of information, right? That's not clear from the patent itself. The argument that was offered is not that he read the preamble in, but that he started actually with testimony from an expert as well as from an annex to the MPEG. It looked to me like that was getting into the same place. Right, and I think Judge Clemenger, the point I was getting at right before your question is the important one. The claims don't say that you have to have all information necessary. It means you're identifying individual packetized data streams. And you say only the PID is necessary to accomplish that goal. I'm sorry, the last part of your trail. You say isn't the PID the only thing that you think is necessary? It's the elementary PID. And that's exactly right, and that's supported, Judge Clemenger, by the specification. If you look, if you compare, for example, and I urge the court to pull up. It's a funny apparatus for decoding if it won't decode. Well, but this court. And then I mean sort of odd. Well, this court has long held that you don't have to have everything necessary to be operative. That's the rampant case. I'm just weighing this because it seems to me that that's really where the key either fits in the lock or it doesn't fit in the lock. Sure, and I think the natural reading of this is that there are things that are packet identifiers that are necessary, and that's the elementary PID. And I urge the court to hold up the language of Column 7, Lines 25 through, I believe, about 30 of the specification. And hold it up. It's almost in parameteria with the language of the Wherein Clause. You'll see the Associates Selected Subchannel SC. That's out of the specification. And Associates a Broadcast Channel With. And then it talks about packet identifiers in the specification. And it says, e.g., for example, not required, but for example, Item 420. Now, Item 420 is a reference to Figure 4. Figure 4 shows that Item 420 is the elementary PIDs. But then you go on in this passage out of the specification, and there's a sentence that begins, in addition. In addition to all that language that was required by the claim, the SLD program map information, in conjunction with the CIT, maps the Selected Subchannel SC to a program number. That's one of the things they say is required. We say it can be, but is not required by the claims. And this is all, remember, in addition and for example, as used in the specification. There's another aspect of this. Just help me, because I'm having the same problem that Judge Clevenger is having. And maybe I'm looking at this overly simplistically. I thought that the point here was to decode MPEG-2 information, and that the theory is that part of that information is these four data fields. It's probably important there, Judge Dyke, to clarify that it's MPEG-compatible information, not necessarily MPEG information, but yes. It has these four data fields, and that in order to do the decoding, you have to be able to operate on those four data fields. Am I misunderstanding what's going on here? Well, I think that's certainly what some of the extrinsic evidence suggested, and that's what the ALJ placed controlling emphasis on. But what we're trying to understand here is what is the scope of this claim? Well, is what you're saying in response to Judge Clevenger that you're not disputing that it has to be able to decode the MPEG-2 information? You're saying it can still decode it without operating on those four data fields? Well, I'm not even sure that I agree with the former point, that it has to be able to do that. Let's assume that we interpreted it to say, yes, it does have to do that. What's your argument then? Well, my argument is then that the way that this claim was written and the way that what is required by this claim is only one piece of information. There may be other pieces of information. But that's because you don't want to have the claim be limited to decoding. We assume, for example, instead of the decoding a data stream that's in the preamble in both the claims, that language was in a claim, means for decoding. If the term means for decoding. Let's not be patent lawyers here. Let's just be reasonable people. Let's assume you get the point I'm trying to make, which is that if the claim was clearly drawn to an apparatus for decoding or a method for decoding. It would be a harder case. It would not only be a harder case on this four points of information, you wouldn't be standing up and talking to it. Well, I think I might have a problem then with regard to indefiniteness, because I can't get this out of the docket. Sorry, I had to be a bit more... What I was trying to get at is it looked to me as if what was going on here, whether the cart got in front of the horse on the intrinsic evidence or didn't, we've never actually had a rigid ruling that said you have to do all this in a locked stack, right? Right. And the obvious question is, did they get it right? And our answer is no. Right. And your best argument for saying that they got it wrong is that the patent is not limited to an apparatus that will decode. That's right. It only reads on an apparatus that is capable of identifying certain packetized data streams. Right. These claims have effectively two limitations, whether they be the apparatus or the method claims. It's means for identifying, means for assembling, or it's identifying and assembling. So the idea is means for identifying some of the information would be covered by the claims, even though it doesn't have means for identifying all of the information. Right. That's exactly right. The term is means for identifying channel map information. Yeah, your argument here is not for infusion purposes. No, that's right. I mean, it's because the A55 kills it, right? That's right. And so the patent talks about the A55, doesn't it? I'm trying to remember if it has a specific reference to the A55. Well, it's certainly known to everybody. I mean, these are the players. That's what they're trying to do. They've got the, you know, standards and they're working around them. It seems strange that somebody would file a patent application for a standard that already exists. You'd sue the guy that filed the claim. And that does create some problems with regard to the scope of the exclusion that Fu and I saw here. But we'll put that, that's for another day. For this case, the main point is that the term channel map information, nowhere in the four corners of this patent document can you find the evidence that it should be limited in the way that they say it should. Unless you read the preamble into the claim. Even then, you still have to go well beyond, because there's nothing in this patent document that tells me that if decoding is actually a claim requirement here, that the actual successful coding. But of course you haven't made that challenge. That you're raising up today. That's a challenge to a hypothetical claim that we're discussing. That's right, but you could have made that argument in the alternative below. Well, there's been no holding here that the preamble is in fact a claim limitation. And what I think the important point to walk away from with regard to channel map information is that it's not that we're complaining about the order of the ALJ's consideration. It's not a process objection. It's that the process that the ALJ used explains how we got to where we are here. And when you start by looking at the annex, which is not, the term is, the ITC points out in its brief, the term channel map information is not in, it's not the term that's used in the MPEC standard. It is not a term that's defined in the patent. In fact, the term used to be, used to have the term table in there, and that was taken out in the prosecution. But you cannot find in this patent document the four elements that FUNAI, the ITC, and the ALJ say will require the channel map information. You don't find that in Figure 3? Let me make sure I have Figure 3 in front of me. Figure 3 is the channel information table that incorporates Figure 4. Well, I think... Because Figure 3 talks about descriptors, and Figure 4 is the figure for descriptors. Right, well, of course these are... You've got channel type, channel ID, you've got all this stuff in there. I think if every one of these things is actually required, then we have an entirely different case, and that's not the construction that FUNAI urged. Now, Judge Clevenger, I don't want to leave this point if the Court has remaining questions unanswered, but I also want to make sure I can get to the disclaimer argument briefly before I sit down and still reserve some time. Our point with regard to the disclaimer argument is that the ALJ erroneously read the term not needed as FUNAI saying to the patent examiner, oh, this is just optional in our invention.  Because remember, FUNAI was trying to overcome an anticipation rejection based on the Wasilewski reference. It is not sufficient. No reasonable person, whether it be a reasonable competitor, person of ordinary skill, or worse, a patent lawyer, looking at this language would say, oh, you could overcome an anticipation rejection by saying, well, sometimes we use it and sometimes we don't, but both are covered by my invention. That's why this Court in the computer docking case, the RFID case, which is non-precedential, but I can cite it now under the new rule, and the Atafina case found very similar language, even though it wasn't in that form that Chief Judge Michel said in AstraZeneca. Can you tell me your rebuttal? I will save that, but the main point is... When you're running out of it. I've seen my clock. The main point here is that the term does not require in this contest has to be a disavowal of the PMT. Mr. Cramer, are you first? No, Mr. Gillespie, the Commissioner. Mr. Valencia? Okay. Good afternoon, Your Honors. May it please the Court. I'd like to pick up where Mr. Castanis left off. I want to take a step back because there's a key point that I think may not be sufficiently clear from the briefs. That point is that prior to the 074 invention, several tables were needed in order to identify and acquire a particular program. What the 074 invention did was take all the information that was necessary to acquire and identify this program and put it into a stand-alone separate data structure so that you could speed up the identification and acquisition of the program using what it calls the channel map or the program map table, whichever is available. Those are alternatives, right? They're not alternatives all the time, Your Honor. You can use the channel map, but technically you need information that's not within the program map table to change the channel. But to acquire the program itself, you can use one or the other. Where does the patent 074 talk about acquiring? Acquiring. Plenty of identification. Where does it talk about acquiring? Let me find that for you. It means for identifying channel map information. Acquiring is really a step that is intermediate to decoding. You heard the argument earlier. If this claim is not limited by decoding, if all it is is a matter of identifying individual packetized data streams, what do you need other than elementary PID to do it? Well, we think it doesn't matter, contrary to Vizio's view. We think any way that you look at the evidence, whether you look at the claim first, the specification first, the MPEG-2 standard first. Well, just look at the claim first. Let's assume that all there is in the case is the claim. Let's assume we didn't have all that extrinsic evidence that they were looking at. Where does the 074 tell you anything about acquiring signals about a program in order to decode it? Well, you have a preamble. That is a limitation. Well, you can't just sort of show it quite so blithely in the patent law, can you? Don't you have to climb up a few greased telephone poles to tell me why the… Sure. Why don't you tell me that? Are you reading a decoding limitation into the claim? Well, you know, the judge didn't. There was no dispute about this. No, no, no.  In your view, it is a limitation. It is. It is. Well, then how can the workaround product infringe if there is a decoding limitation since, as I understand it, the decoding has been disabled? It doesn't decode. No, Your Honor, it actually does decode. What the workaround… I'm touching on some CBI here, so I need to be careful. But the workaround products do decode. Otherwise, they wouldn't work. I mean, they need to be able to decode and display a picture. I thought they disabled the reconstructed map table. Well, again, I'm getting close to some CBI here, so I trust Mr. Cstanius will jump up and alert me. What's going on there is the channel map that the ALJ found, the device in the accused product that met this limitation. They're not using parts of it. In essence, parts of it are being ignored by the workaround products. Well, one of these television sets is used by somebody, actually used by somebody. It doesn't use the information that's identified, right? It does, Your Honor. It does use it, and that's a fact that was found. How does it use it? Well, it stores, it identifies and assembles it and meets the elements of the claim. It assembles it, and then it's got a little switch that says off, and you turn it off. That's not actually entirely right, Your Honor. What's going on is it identifies and assembles it, and then it'll take a part that it uses and take a part that it doesn't use. And the part that it doesn't use, it just doesn't further process. But it does use the channel map. Does that have the effect of not decoding? The whole object of the invention is to do the decoding so when you flick from channel to channel, it goes quick like a bunny, right? Absolutely. And if you have cable TV and you've got a cable TV clicker, all that technology is in the cable box, and so you don't need it in the TV, right? So you can buy a TV that doesn't have this fancy feature because the cable box gives it to you, right? So the question is what's being sued for infringement here are the TVs, not cable boxes that belong to somebody else. So Judge I's question was, well, if the claim is drawn to decoding, you have to decode. If the workaround products don't decode, how can they infringe? The step before the decoding step is identifying the program. And the workaround products do identify the program. Yeah, but do they decode is the point. If there's a decoding limitation read into this, if they don't decode, they don't infringe. Well, they do decode. They have to decode, otherwise they can't display the picture. It has to decode the picture. The question is what is it using? What is doing that? Is it using the PMT or is it using the reconstructed data? It's using the program number to identify the program within the packetized data stream. It's also using the stream type identifier, which they maintain they're getting from the program map table. But the fact is the ALJ required the program number, which they actually use from the channel map, as part of the construction of the channel map. And so they're using the stream type, they're using the PCR PID, they're using the... I'm confused because I thought your argument was that even though they disabled this, that it's still infringed, even though it wasn't actually used for decoding. That is our argument, Your Honor. Well, then that's the problem. Well, I would urge the court to look at the claims. The claims define the scope of the invention. There's nothing in the invention about using a channel map, using a PMT, or using any other table. And so the fact that they're trying to look at the prosecution history and read a disclaimer when there's no link to the claim just doesn't make any sense. And if you read the statement... Are you saying they infringe if they use solely the PMT? Well, that's not the case that we have here, and I would... What's the answer? Well, yeah, I would have to say that's consistent with our position, which is that use is not required by the claim. Use is required by Claim 5, so if that requires... I thought you said decoding, which is use, is required by the claim. Well, I wasn't saying that, Your Honor. Let me back up. What I was saying was simply that the preamble is a limitation, and this has never been an argument... But you said that decoding was required as a claim limitation. No, let me correct any misunderstanding. What I was saying, Your Honor, was simply that the preamble, you can't ignore the preamble. It puts the invention into context... Is decoding a limitation or isn't it? It's not a limitation. That's contrary to what you said five minutes ago. I'm sorry for the misunderstanding. Okay, so if it's not part of the claim, decoding, then in order to meet the limitations of the apparatus claim, why do you need any more than elementary PID? Well, you can't fully identify all the elements constituting a program as it's required by the claim. What does it say, all the elements of the program? Let's see. It says... It replicates information conveyed in an MPG-compatible program. Right, and then it says said replicated information associates a broadcast channel... With a packet of identifiers... Right. Used to identify individual packeted data streams... That's correct. That constitute a program. Right, that constitutes a program, and that's the key point, that constitutes a program. And so you have... In order to constitute a program, you have the elementary streams that are audio, video, or data parts to a program, but you need to be able to identify using the program number, using the program... What you're saying is that you need all those four elements in order to identify packetized data streams that will constitute a program. Yes. Okay, that's fine. Thank you. Now let's hear from Mr. Cooper. The last point, Your Honor, is the key one, which is the claim says you have to have the identification of all of the parts of the MPG-compatible data stream  and there's no dispute about what under MPG is required to constitute a program. The MPG experts who wrote MPG tell us exactly what's needed to constitute a program. Now that's why those elements are required, and counsel may not be able to pick this up and look at it and know that, but the issue is one of ordinary skill in the art, which everybody agrees here would know MPG inside and out, would know that. They would know looking at column seven, what's described there is a process by which you are constituting a program in MPG and that requires all of the elements that are required in the program map table to do that. Does the claim require decoding? The claim requires, for example, claim one requires an apparatus for decoding. It doesn't say you have to use particular things for that decoding. So your concept is that there's infringement of these claims even though the TV set is set up in such a way that it's disabled and you can never use the mechanism that's described in the claims. I believe that you could still have infringement if you identify and assemble like a virtual channel table that has all the required information. Even though there's nothing that can be done with it. Even if you don't use it. There's lots of things that could be done with it, but in this case... But there's no way that the owner of the TV set can undisable it, right? Undisable what? They can't undisable the steps that identify and assemble that which constitutes the infringement. The owner of the TV set can't undo the disabling of this mechanism so that the person is using the reconstructed channel map table to extract the necessary information from the programs. The answer to that is they have to use at least some of the information from the virtual channel table. They have to. It's undisputed in the record. And they have to use more than elementary PID? Well, they have to use more than elementary PID, yes. Let me cite something in the record. But that doesn't seem to be what the ALJ found. Yes, it is. If you look at 657 in the record, it's undisputed, and the evidence cited there is 28759 to 28760. It's undisputed that all of the digital televisions at issue use the virtual channel table that's assembled. They use the major and minor channel numbers and they use the program number. They use the virtual channel table. You can't use the television without that. So yes, they do use it. I don't think it's required by the claim. But they do. There's no dispute about it. Which page was that? A657 is the ALJ's ruling that all televisions use the program number and the virtual channel table major and minor channel numbers. And the supporting evidence from Dr. Bove is at 28759 through 760. It's undisputed. The other thing I have to say with respect to the disclaimer argument is both experts in this case agreed there was no disclaimer. If that doesn't raise at least ambiguity as to whether there's a disclaimer, I don't know what to say. Secondly, the fact is that with respect to the steps that occur of identifying and assembling, they do not use the PMT. If you look through the judge's ruling at page 557 through 63, there's no mention of the use of the PMT at all anywhere. What they're saying is after the virtual channel table is assembled and completely there, and after which point the judge found infringement, they do other things downstream later. So the contention in section 1C of the reply brief that it's undisputed that they use the PMT for what's infringing is just wrong. There's not a single citation in that section. The reason is there's no evidence. So let me restate that. It's undisputed that all of the televisions use the virtual channel table in decoding because they have the major and minor channel numbers. The virtual channel table is the reconstructed map table. Yes. Undisputed. So those are the key points in terms of unwinding all of this. The claims require an apparatus for decoding. It leads me to wonder why you're fighting so hard to construe the terms for identifying and suitable for use so that they didn't require any ability to use it. Your theory was, before the commission, that the information just had to be in there even though it was disabled. And now you're telling us, as I understand it, that the information not only was there, but that it was used. Yes. We said, as a matter of plain instruction, you don't need it. They raised this other argument. In response to that, we put in evidence to say it doesn't matter. They use it. The judge agreed with both arguments. So, looking at what the claims say, we read directly from the claim, you need all of that information that one of Ordinary Scale and ANPEG would understand your need to constitute a program. And, in this case, with respect to the disclaimer argument, there's no disclaimer, and it doesn't get them anywhere. Because, as they've now conceded, in Section 1C, if the disclaimer relates to anything at all, it relates to the identification and assembly steps. But, in this case, there's no dispute that, with respect to what the judge found infringed as to both of those steps, they don't use the PMT. There's no evidence anywhere in the record of that. None. What they do is, after that, later on, after there is the infringement, they use things from the PMT. That doesn't really have any consequence. The issue of infringement where the judge found infringement based upon identification and assembly of the VCT. Any other questions? Thank you. Mr. Christian, yes. With respect to the channel map information requirement, I think my opponents are at a deference with regard to whether the preamble is a limitation. Mr. Valencia says it isn't. Mr. Kramer got up here and said that Claim 1 requires an apparatus for decoding. Well, that's language right out of the preamble. Just to clarify the question for you, Judge Clevenger, if you look at page A537, that's the ALJ saying that the preamble is not an issue in this case. The preamble was not urged to be a limitation. Mr. Valencia is right. Mr. Kramer is wrong. I think the scope of the disclaimer Let's go back. I'll leave the disclaimer for the end. Secondly, with regard to what's required for channel map information, the specification is replete with uses of the terms example or exemplified. If you look at the bottom of column 5, it says the program-specific information including a variety of data incorporates advantageous features exemplified in the data formats presented in figures 2 through 9. These are not requirements. They're examples. There's a long history of this Court's cases saying examples are not claim limitations. With regard to the scope of the disclaimer, Mr. Valencia said, I believe, if I heard him correctly, that even if we use the PMT, then we still infringe. If that's the case, then that comment that was made, that argument that was made to overcome the Wasilewski rejection meant nothing. It had to mean something to get over Wasilewski. The fact is that it disclaimed and the term use has been used here very generally. Remember that the claims the specific type of use that is at issue in these claims is the identification and assembly of a channel map. That's the use and that's not what we do in our work around products. What about the suggestion that your device uses the VCT information and so it doesn't make any difference that the AJ construed for identifying as being satisfied even if the thing was disabled? The state of the record is that we do use the PMT and we have at the work around products He's talking about VCT. I understand that. Let's start with the PMT. Start and finish. Let's make it fast. You looked at your clock when I tried to talk to you and you gave me a flip remark. Answer it properly and we're going to terminate the case. Judge Dyke, I think that whether or not we use the VCT does not matter and Judge Mayer I did not mean to make a flip remark. I apologize. Case is submitted.